No. 14,429.

RULAND *v.* THE PEOPLE.
(84 P. [2d] 821)

Decided November 21, 1938.

Mr. TRACY C. CAMERON, Mr. ROY M. BRIGGS, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, for the people.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is an action under the criminal code in which an information was filed charging Ruland, plaintiff in error, jointly with Marvin Witcher, W. H. Boles, Edward Rucker and Gilbert Hack with the larceny of eleven horses, property of the Reverse K4 Land and Cattle Company.

The charge was dismissed as to Boles and Witcher; Hack pleaded guilty; Rucker and plaintiff in error stood trial and were found guilty by a jury. Rucker did not join in the motion for a new trial, and consented that sentence might be imposed; consequently, Ruland alone is seeking reversal. He submits his case on an application for supersedeas and requests it be decided thereon. In this latter request, he is joined by the Attorney General. We proceed accordingly. Reference will be made to the parties as they appeared in the trial court.

The information, omitting formal statements, charged that the named defendants "eleven (11) head of horses of the personal goods and chattels of The Reverse K4 Land and Cattle Company, a corporation, then and there being found, then and there wilfully, unlawfully and feloniously did take, steal, drive and lead away, and did then and there wilfully, unlawfully and feloniously deprive the said owner of the immediate possession thereof with intent to steal the same, and did then and there wilfully, unlawfully and feloniously apply the same to their own use with intent to steal the same, contrary," etc.

Defendant relies upon four assignments of error for reversal, but by reason of the view we take of the matter it will be necessary to consider only one; namely, the impropriety of the giving of instruction No. 10.

The questioned instruction reads as follows: "The court instructs the jury that the possession of stolen property recently after the commission of a theft or larceny may be a criminating circumstance tending to show that the person or persons in whose possession it was found is guilty of the offense of larceny, as charged in the information, unless they have satisfied you from the evidence, or from the facts and circumstances proven upon the trial, that the defendants came into possession of the property honestly."

Defendant relies on certain remarks of the trial judge as showing that there was no evidence in the record of possession in him of the horses at any time. As a basis

for such reliance, he refers us to the following quoted remarks of the court: "The offer of proof will be overruled and denied, first because it is not impeaching testimony. There is no evidence in this case that one single stolen horse was ever found in Andy Ruland's possession. Mr. McPherson [a manager of and interested in the cattle company] admitted here yesterday, that this one saddle horse that has been talked about—that he first thought it was a stolen horse, but that he afterwards found out that he was mistaken. So, as far as this record is concerned, there is no record that any stolen property whatever was ever found in Mr. Ruland's possession, so there is no necessity to meet that issue, as it is wholly immaterial."

While, of course, this statement is not conclusive upon us, it is persuasive. In addition, the analysis of the testimony upon which reliance is placed by the Attorney General to support the instruction fails in that respect. That analysis is as follows: "Hack went with Ruland, Rucker, Bowles and Witcher to drive the horses to Ruland's place. Hack had an arrangement with Ruland that Ruland was to pay him $10.00 per head for whatever horses Ruland wanted. He had been paid about $30.00.

"Hack was not authorized by the McPherson Brothers, who were the managers and operators of the Reverse K-4 ranch, to sell these horses or any horses. William McPherson was the business manager of the Reverse K-4 Land and Cattle Company. The Company was owned by William McPherson, his mother, two sisters and a brother. Hack was in the employment of the Company in 1936. According to the testimony of William McPherson, McPherson had never given Hack any authority to sell any horses belonging to the Company.

"Hack testified that Bowles, Witcher and Rucker were working for Andy Ruland at the time of the taking of the horses and that the defendant Ruland knew that the horses were unlawfully taken.

"Mrs. Gilbert Hack testified that she was the wife of Gilbert Hack and lived with him on the K-4 camp of the Reverse K-4 Land and Cattle Company for about four years. They were living there in June 1936. She saw the defendant Ruland, Rucker and Bowles at the place a few days before the 16th of June. Ruland had supper with them. Bowles and Rucker came to the K-4 camp about supper time. They left about 8:30 in the evening; they took several head of horses with them. The horses were never brought back to the ranch."

The most that can be said of this evidence is that it tended to prove the theft of the horses, but there is not one word in it that would be evidence of "possession of stolen property recently after the commission of a theft or larceny," as contemplated by the instruction.

We conclude, therefore, that the giving of the instruction under the circumstances detailed above was prejudicial to the rights of defendant and that by reason thereof he was not accorded a fair trial.

The judgment is accordingly reversed and the cause remanded for such further proceedings as may be meet and proper in the premises.

Mr. Justice Holland not participating.